FILED

2012 MAY -2 PM 2:06

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1 | CALDWELL LESLIE & PROCTOR, PC
MICHAEL D. ROTH, State Bar No. 217464
2 | *roth@caldwell-leslie.com*
1000 Wilshire Boulevard, Suite 600
3 | Los Angeles, California 90017-2463
Telephone: (213) 629-9040; Facsimile: (213) 629-9022

4

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
5 | BARBARA SOLOMON (Pro Hac Vice Application Pending)
*bsolomon@fzlz.com*
6 | MICHAEL CHIAPPETTA, State Bar No. 185256
*mc@fzlz.com*
7 | 866 United Nations Plaza
New York, New York 10017
8 | Telephone: (212) 813-5900; Facsimile: (212) 813-5901

9 | Attorneys for Plaintiff
RENAISSANCE PICTURES, LTD.

10

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

14 | RENAISSANCE PICTURES, LTD.,

Case No. **CV12-3805** -DSF (JCGx)

15 | Plaintiff,

**COMPLAINT**
(Injunctive Relief Sought)

16 | v.

17 | AWARD PICTURES, LLC,

(1) False Designation of Origin,
15 U.S.C. § 1125(a)(1)(A);

18 | Defendant.

(2) Federal False Advertising,
15 U.S.C. § 1125(a)(1)(b);

19

20 | (3) Trademark Infringement and Unfair
Competition Under California
Common Law and Cal. Bus. & Prof.
21 | Code § 17200; and

22 | (4) Injury to Business Reputation
Cal. Bus. & Prof. Code § 14247

23

**JURY TRIAL DEMANDED**

24

25 | Plaintiff Renaissance Pictures, Ltd. ("Plaintiff" or "Renaissance"), by its

26 | attorneys Fross Zelnick Lehrman & Zissu, P.C. and Caldwell Leslie & Proctor, P.C.,

27 | for its complaint against Defendant Award Pictures, LLC ("Award Pictures" or

28 | "Defendant") alleges as follows:

## SUBSTANCE OF THE ACTION

1. This action arises out of Defendant's attempt to trade on the cult hit EVIL DEAD movie series and other licensed entertainments by using the name and mark EVIL DEAD as or as part of a title for a motion picture, and in connection with the promotion, development and production of such motion picture, which use violates Plaintiff's rights in its EVIL DEAD trademark in connection with identical and/or highly related goods and services. Based on Defendant's unlawful conduct alleged herein, Plaintiff asserts claims for false designation of origin and unfair competition under §43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A), false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B), and substantial and related claims under California state and common law. Plaintiff seeks, *inter alia*, injunctive relief; an accounting and award of Defendant's profits and Plaintiff's damages flowing from Defendant's infringing activities, which amounts should be trebled; prejudgment interest; attorneys' fees; and any other relief the Court deems just and proper.

## PARTIES

2. Plaintiff Renaissance Pictures, Ltd. is a limited partnership organized and existing under the laws of Michigan, with its principal place of business located at 450 North Roxbury Drive, 8th Floor, Beverly Hills, California 90210. At all relevant times, Renaissance Pictures, Ltd. used or otherwise controlled the use of the mark EVIL DEAD.

3. Upon information and belief, Defendant Award Pictures, LLC is a Connecticut limited liability company doing business at 112 Carmen 2 Hill, New Milford, Connecticut 06776-4511, and is using and attempting to market motion pictures under the names *EVIL DEAD 4: Consequences* and *EVIL DEAD: Genesis of the Necronomicon*. Award Pictures has exhibited at the annual American Film Market trade show in Santa Monica, California, advertised and promoted its services under the EVIL DEAD mark in this district and solicited business in this district.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121 and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a)-(b). The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. §§ 1367(a).

5. Upon information and belief, this Court has personal jurisdiction over Defendant because Defendant has solicited business in this district, including by attending the annual American Film Market trade show in Santa Monica, California, has advertised and promoted its services in this district, including in *Variety*, promotes its movie production services, including by promoting its movies and television projects on a website accessible in California, and is targeting the motion picture industry in California, and the exercise of jurisdiction over it is not inconsistent with the Constitution of California or the United States. Cal. Code Civ. Proc. § 410.10.

6. Upon information and belief, venue is proper in this district pursuant to Section 1391(b) and 1400(b) of the Judicial Code, 28 U.S.C. §§ 1391(b) and 1400(b), because a substantial part of the events at issue and Defendant's acts of infringement have occurred in this district and Plaintiff is suffering harm in this district.

## FACTS COMMON TO
## ALL CLAIMS FOR RELIEF

A. Renaissance and Director Sam Raimi

7. Plaintiff Renaissance was formed in 1979 by its three general partners – writer-director-producer Sam Raimi, producer Robert Tapert and actor-producer Bruce Campbell – for the purpose of producing the trio's first motion picture entitled *The Evil Dead*. Since its formation, Renaissance has continued to produce numerous motion pictures, including but not limited to the motion pictures *The Evil Dead*; *Evil*

1 *Dead II; Evil Dead III: Army of Darkness; Darkman; Hard Target;* and *Timecop,*
2 and the extremely successful television series *Hercules: The Legendary Journeys*
3 and *Xena: Warrior Princess.*

4     8. Sam Raimi, who has directed all of the EVIL DEAD films, is one of the
5 most sought-after directors in Hollywood. In the 1990's, Mr. Raimi directed
6 numerous critically praised films, including *Darkman, The Quick and the Dead, A*
7 *Simple Plan* and *For The Love of the Game.* Then in 2002, he directed the
8 blockbuster *Spiderman* motion picture, which grossed more than $800 million
9 worldwide. In 2004 and 2007, he directed *Spiderman 2* and *Spiderman 3,*
10 respectively, which collectively grossed another $1.7 billion. All three films set
11 opening day box office records upon their theatrical release in the United States and
12 all three are included in the 25 highest-grossing domestic films of all time.

13 B.   The EVIL DEAD Motion Picture Trilogy

14     9. The Renaissance team of Sam Raimi, Robert Tapert and Bruce Campbell
15 are renowned for their series of EVIL DEAD motion pictures, which are among the
16 top horror / cult movies of all time.

17     10. In the late 1970's, the team collaborated on a 30-minute horror film
18 entitled *Into The Woods,* an abbreviated version of what they envisioned for their
19 first feature film. *Into The Woods* was well-received and enabled the Renaissance
20 team to secure the investors they needed to fund *The Evil Dead.*

21     11. Co-written (an original screenplay) and directed by Sam Raimi, and
22 featuring an iconic performance by Bruce Campbell as lead character Ashley J.
23 Williams (Ash for short), *The Evil Dead,* which was first released theatrically in the
24 U.S. in 1983, is a horror film about a group of five friends that travel to a cabin in the
25 woods where they find an ancient Sumerian text called The Necronomicon Ex-
26 Mortis (a.k.a., The Necronomicon, translated in the film as the "Book of the Dead"),
27 along with an audio recording containing incantations from the Necronomicon that
28 summon evil spirits when spoken aloud. Made for less than half a million dollars,

1    the film was an enormous success for a movie in the horror genre, grossing more
2    than $29 million theatrically to date.

3        12.  Years after its original release, *The Evil Dead* continues to draw
4    audiences and is recognized as a cult / horror classic.  In its 2010 list of the 50 Best
5    Horror Movies of all time, movie review site *Rotten Tomatoes* ranked *The Evil Dead*
6    at #11, ahead of horror classics such as *Jaws*, *Rosemary's Baby*, *The Birds* and
7    *Silence of the Lambs*.  In 2010, *Wired* magazine likewise ranked *The Evil Dead*
8    among the Best 25 Horror Movies of all Time.  *The New York Times* referred to *The*
9    *Evil Dead* as the film that secured "young director [Sam Raimi's] cult status as a
10   creative force to be reckoned with."  And on September 30, 2011, *Time* magazine
11   ranked *The Evil Dead* as among the Top 10 Haunted House Movies of all time, in the
12   company of films such as *The Shining* and *Poltergeist*.

13       13.  The popularity of *The Evil Dead* led the Renaissance trio to reunite for
14   *Evil Dead II: Dead By Dawn*, with Mr. Raimi as co-writer, director and co-producer,
15   Mr. Campbell as actor and co-producer, Mr. Tapert as co-producer and DeLaurentis
16   Entertainment Group as co-producer.  Released in 1987, *Evil Dead II: Dead By*
17   *Dawn* features the return of Ash, the lone survivor from the first film played again by
18   Bruce Campbell, as he continues his battle against the evil spirits conjured by the
19   Necronomicon, this time armed with a shovel, a shotgun and a chainsaw.  While
20   maintaining the horror imagery of the original, Mr. Raimi injected the sequel with a
21   comedic / slapstick edge.  Mr. Raimi's styling, coupled with Mr. Campbell's inspired
22   physical performance (which includes a no-holds-barred brawl with his own
23   possessed hand, culminating with him vindictively "lopp[ing] it off at the wrist"),
24   has led many to agree that *Evil Dead II* surpasses its predecessor in terms of cult
25   renown.

26       14.  Yahoo says of the sequel, "*Evil Dead II* is the second installment in Sam
27   Raimi's infamous cult trilogy of horror/comedy films, arguably the best in his full
28   lineup... ."  *The New York Times* refers to *Evil Dead II*: "This high-octane semi-

{F|001792.1}                                                                          5

1 sequel to Sam Raimi's cult hit *The Evil Dead* has nearly eclipsed its predecessor's
2 reputation thanks to an endless barrage of hyperkinetic camera acrobatics, rapid-fire
3 editing and "splatstick" gore effects... " *Rotten Tomatoes* ranked *Evil Dead II: Dead*
4 *By Dawn* as No. 20 in its 2010 list of the 50 Best Horror Movies. To date, the
5 second installment of the EVIL DEAD trilogy has grossed theatrically more than $12
6 million in the United States.

7    15.  The final seconds of *Evil Dead II* has hero Ash and his automobile
8 transported back in time to the middle ages, which is where the third installment of
9 the series, entitled *Army of Darkness: Evil Dead III,* begins.  Released theatrically in
10 the United States in 1993, *Army of Darkness: Evil Dead III* again brought together
11 the Renaissance production team of Mr. Raimi (co-writer, director), Mr. Campbell
12 (lead actor, co-producer) and Mr. Tapert (co-producer), and was co-produced by
13 Renaissance, Dino De Laurentis Communications and Universal Pictures. *Army of*
14 *Darkness: Evil Dead III* continued the slapstick approach of *Evil Dead II,* following
15 shotgun and chainsaw-toting Ash as he reluctantly fights alongside a medieval
16 village besieged by spirits and demons that were released by the power of the
17 Necronomicon.  The gross domestic theatrical revenues to date for the third
18 installment in the EVIL DEAD series exceeds $11.5 million.

19    16.  Each film in the EVIL DEAD trilogy has been shown in theaters
20 throughout the United States, and each continues to be shown regularly at horror film
21 festivals and conventions, resulting in a combined domestic, theatrical gross of more
22 than $50 million to date.  Each EVIL DEAD picture also is available in a variety of
23 home viewing formats, including VHS, DVD, Blu-Ray and on-demand streaming
24 (e.g., through Amazon).

25    17.  Given the cult status of the EVIL DEAD trilogy, dozens of websites,
26 fanzines, books and blogs have been created dedicated to the films, such as *Raimi-*
27 *Zine* (fanzine), *Bruce On A Stick* (fanzine), The Evil Dead Companion (book), The
28 Evil Dead Blog, *deadites.net, evildeadnews.com, bookofthedead.ws* and

1  *ladiesoftheevildead.com* to name a few. All of these sources recognize that
2  Renaissance is the exclusive source of the films.

3       18. Fans of the series have long been eager for another installment. At
4  motion picture and entertainment conventions and in other interview contexts, Mr.
5  Raimi and Mr. Campbell have been asked repeatedly whether they would ever make
6  an *Evil Dead 4*. Always entertaining the notion of another film, in 2011, the
7  Renaissance team finally announced that they would be making another EVIL
8  DEAD motion picture, this time a remake of the original *The Evil Dead*, which will
9  once again be co-written by Sam Raimi and co-produced by Mr. Raimi, Mr.
10  Campbell and Mr. Tapert. Evil Dead, LLC, a company set up by Mr. Raimi, Mr.
11  Tapert and Mr. Campbell and licensed by Renaissance to use the EVIL DEAD
12  trademark, is currently in pre-production on the new EVIL DEAD film, which is
13  expected to be released some time in 2013.

14  B.    The Enduring EVIL DEAD Brand

15       19. As is commonly done in order to properly finance and distribute major
16  motion pictures, Renaissance assigned certain copyright rights in the EVIL DEAD
17  motion pictures to third party production companies and distributors that were
18  involved with the films. Renaissance has, however, retained the copyright rights in
19  the first motion picture *The Evil Dead* (including sole ownership of character rights
20  and remake rights, among other rights, including co-ownership of sequel rights), and
21  is the owner of U.S. Copyright Registration Nos. PA 131098, PAU 411-638 and PA
22  166-69 for the motion picture and its protectable elements.

23       20. Further, Renaissance is and has remained the owner of all rights in the
24  EVIL DEAD trademark. Indeed, when consumers think of the EVIL DEAD series,
25  they inevitably think of the Renaissance team - Mr. Raimi, Mr. Campbell and Mr.
26  Tapert – which is the source of all three films and the upcoming fourth film.

27       21. As owner of the EVIL DEAD trademark, Renaissance has entered into a
28  number of licenses for use of the EVIL DEAD trademark, including in connection

with a series of EVIL DEAD video games, namely, *The Evil Dead* (1984); *Evil Dead: Hail to the King* (2000); *Evil Dead: A Fistful of Boomstick* (2003) and *Evil Dead: Regeneration* (2005). The EVIL DEAD video games all contain plot elements and characters created by Sam Raimi, and they all feature the vocal performance by Bruce Campbell playing the iconic Ash. Renaissance also authorized a stage musical production *Evil Dead: The Musical,* which began in Canada and has made numerous appearances in the United States including Off-Broadway in New York City.

22. Over the years, Renaissance has offered and licensed for sale various merchandise, including dolls, clothing and memorabilia from the films bearing the EVIL DEAD trademark. Renaissance also licensed an EVIL DEAD comic book series and a 3-issue paperback literary adaptation of the films penned by Sam Raimi.

23. On June 1, 2010, Renaissance filed U.S. Trademark Application Serial No. 85052146 to register the EVIL DEAD trademark in connection with "entertainment in the nature of theater productions; entertainment media production services for motion pictures, television and Internet; motion picture film production."

24. As a result of Renaissance's use of the EVIL DEAD mark and the cult success of the films and related products, the EVIL DEAD mark has acquired enormous value, has become famous among the relevant consuming public and motion picture trade, and is recognized as identifying and distinguishing Renaissance exclusively and uniquely as the source of goods sold and services provided under the EVIL DEAD mark.

C. Defendant's Unlawful Conduct

25. In February 2004, approximately two decades after Renaissance first established its rights in the EVIL DEAD mark, years after the EVIL DEAD movies had been commercially and continually shown, and well after EVIL DEAD became associated exclusively with entertainment produced and/or licensed by Renaissance, Renaissance received a letter from Defendant Award Pictures claiming it had the

right to make a motion picture entitled *Evil Dead 4: Consequences*. Based on the letter and the proposed title of the motion picture, it was evident that Defendant contemplated and intended to cause consumers to falsely identify *Evil Dead 4: Consequences* as a fourth installment in Renaissance' famous EVIL DEAD series. Renaissance responded to Defendant's letter by informing Defendant that any attempt by Defendant to make a motion picture under the EVIL DEAD name and mark would constitute a violation of Renaissance's copyright and trademark rights.

26. Following the exchange of letters, Renaissance did not hear from Defendant again (until recently as alleged below), and to Renaissance's knowledge, Defendant did not release any motion picture or other entertainment under the EVIL DEAD name or mark. However, it recently came to Renaissance's attention that Defendant has announced on its website at www.awardpictures.com its "upcoming series of EVIL DEAD motion pictures" with *EVIL DEAD: Genesis of the Necronomicon* as the first installment. Defendant claims on its website that the film *EVIL DEAD: Genesis of the Necronomicon* is "in development."

27. On February 22, 2012, Defendant filed a Notice of Opposition with the U.S. Patent and Trademark Office (the "USPTO"), Trademark Trial and Appeal Board, against Renaissance's Application Serial No. 85052146 to register the EVIL DEAD trademark, alleging that it has a "bona fide intent to use the title, and/or, title element, in Award Pictures' upcoming motion picture productions of, but not limited to; *Evil Dead: Genesis of the Necronomicon*; *Evil Dead: Genesis of the Necronomicon, Part 2*; *Evil Dead: Consequences*, and all other Feature Motion Pictures that use the title, or title element, *Evil Dead*."

28. On information and belief, Defendant is using Renaissance's EVIL DEAD mark in this manner for the improper purpose of summoning interest in its own business and films by falsely associating itself with Renaissance's cult hits to induce investors.

29. Renaissance never granted any copyright or trademark rights to Defendant, yet Defendant is advertising and promoting its contemplated EVIL DEAD films under Renaissance's EVIL DEAD trademark. Such promotion, development and production of EVIL DEAD motion pictures by Defendant, which entails prominent use by Defendant of Renaissance's precise EVIL DEAD trademark and includes a description of the its forecasted EVIL DEAD movies that holds them out as a continuation of Renaissance's EVIL DEAD trilogy, will inevitably confuse consumers and the motion picture industry into believing that Renaissance is associated with such motion pictures, when in fact it is not, or that Renaissance has endorsed or approved such motion pictures, when in fact it has not. Further, the use of EVIL DEAD by Defendant falsely describes and otherwise misrepresents Defendant's movies by creating the erroneous impression that Defendant's films are a continuation of Renaissance's pre-existing EVIL DEAD trilogy.

30. Renaissance has not reviewed or seen any screenplay, film, video or other work underlying Defendant's contemplated EVIL DEAD motion pictures, but on information and belief, any such work would inevitably infringe Renaissance's copyright rights in *The Evil Dead*, including key plot elements and character names, which Defendant refers to in the synopsis of its films as set forth on its website. Renaissance reserves the right to amend this pleading to assert such a claim to the extent it learns in this proceeding that any such infringing work exists.

31. Upon information and belief, Defendant selected and has used the mark EVIL DEAD in the titles of its anticipated films and otherwise to promote its business with actual and constructive knowledge of Renaissance's ownership of and/or exclusive rights to use the EVIL DEAD mark and with the intent to trade off the significant goodwill symbolized by and the strong industry recognition of the EVIL DEAD mark.

{F1001702.1.1}

# FIRST CAUSE OF ACTION

(False Designation of Origin and Unfair Competition Under
Section 43(a)(1)(A) of the Federal Trademark Act, 15 U.S.C. § 1125(a)(1)(A))

32. As a cause of action and ground for relief, Plaintiff alleges that Defendant is engaged in acts of false designation of origin and unfair competition under § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a) and incorporates by reference ¶¶ 1 through 31 of the complaint as a part of this count

33. Defendant's use of the EVIL DEAD mark as alleged above, is likely to confuse, mislead, or deceive consumers and the motion picture industry as to the origin, source, sponsorship, or affiliation of Defendant's motion pictures and motion picture promotion, development and production services, and is likely to cause such persons to believe, contrary to fact, that Defendant's motion pictures are created, authorized, endorsed or approved by Plaintiff and/or that Defendant's motion picture promotion, development and production services are provided, authorized, endorsed or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

34. Defendant's actions in the manner alleged above constitute a false designation of origin and unfair competition, which have caused, and are likely to cause, confusion, mistake and deception, in violation of § 43(a)(1)(A) of the Federal Trademark Act, 15 U.S.C. § 1125(a)(1)(A).

35. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to damage Plaintiff unless enjoined by this Court. Plaintiff has no adequate remedy at law.

# SECOND CAUSE OF ACTION

(False Advertising Under Section 43(a)(1)(B) of the
Federal Trademark Act, 15 U.S.C. § 1125(a)(1)(B))

36. As a cause of action and ground for relief, Plaintiff alleges that Defendant is engaged in acts of false advertising under § 43(a)(1)(B) of the Federal Trademark

Act, 15 U.S.C. § 1125(a)(1)(B) and incorporates by reference ¶¶ 1 through 35 of the complaint as a part of this count.

37. Defendant's use of the EVIL DEAD mark as alleged above in connection with the advertisement of its motion pictures and its motion picture development and production services (e.g., in *Variety*, on the Internet, etc.) misrepresents to consumers and the motion picture industry the nature and characteristics of Defendant's motion pictures and motion picture development and production services by falsely suggesting that they are part of or associated with Plaintiff's EVIL DEAD franchise or are otherwise an authorized sequel.

38. Defendant's actions in the manner alleged above constitute false advertising, which have caused, and are likely to cause, confusion, mistake and deception, in violation of § 43(a)(1)(B) of the Federal Trademark Act, 15 U.S.C. § 1125(a)(1)(B).

39. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to damage Plaintiff unless enjoined by this Court. Plaintiff has no adequate remedy at law.

## THIRD CAUSE OF ACTION

(Trademark Infringement and Unfair Competition Under California Common Law And State Law - CAL. BUS. & PROF. CODE §17200)

40. As a cause of action and ground for relief, Plaintiff alleges that Defendant is engaged in acts of trademark infringement and unfair competition under California law and the common law and incorporates by reference ¶¶ 1 through 39 of the complaint as a part of this count.

41. Defendant has copied, used and continues to use a mark or name that is identical to Plaintiff's EVIL DEAD mark for goods and services that are highly related or identical to the goods and services that Plaintiff provides under the EVIL DEAD mark in this state.

IF1001792.1.1

42. Defendant's use of the EVIL DEAD mark, which is identical and confusingly similar to Plaintiff's EVIL DEAD mark, constitutes intentional appropriation with the intent to cause confusion, mistake and deception as to the source of Defendant's goods and services. Defendant's use of such name and mark is for the willful and calculated purpose of misappropriating Plaintiff's goodwill and business reputation, and for the purpose of deceiving the public and trade as to the nature and origin of Defendant's goods and services, in violation of Plaintiff's rights under the common law of the state of California and the California Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200 *et seq.*

43. Defendant was on notice and had actual knowledge of Plaintiff's exclusive rights in the EVIL DEAD mark before adopting the identical EVIL DEAD name and mark in connection with its motion pictures and motion picture development and production services. Defendant's use of the EVIL DEAD mark and name is willful, in bad faith and with full knowledge of Plaintiff's prior use of, exclusive rights in, and ownership of the EVIL DEAD mark, with full knowledge of the reputation and goodwill associated with the EVIL DEAD mark, and with full knowledge that Defendant have no right, license or authority to use the EVIL DEAD mark. By using the EVIL DEAD mark and name, Defendant has been unjustly enriched and Plaintiff has been damaged.

44. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to damage Plaintiff unless enjoined by this Court. Plaintiff has no adequate remedy at law.

## **FOURTH CAUSE OF ACTION**

(Injury To Business Reputation
California State Law - Cal. Bus. & Prof. Code §14247)

45. As a cause of action and ground for relief, Plaintiff alleges that Defendant is engaged in acts that injure Plaintiff's business reputation in violation of

1    Cal. Bus. & Prof. Code §14247 and incorporates by reference ¶¶ 1 through 44 of the
2    complaint as a part of this count.

3    46.    The EVIL DEAD mark for entertainment services is famous and
4    distinctive in the State of California and became famous and distinctive long before
5    Defendant commenced use of the EVIL DEAD name and mark in connection with
6    its goods and services. In California, the EVIL DEAD mark is exclusively identified
7    with Plaintiff and its goods and services and is immediately recognizable to
8    consumers as signifying the goods and services of Plaintiff.

9    47.    Defendant's use of the name and mark EVIL DEAD as alleged above is
10   likely to dilute the distinctive qualities of Plaintiff's famous EVIL DEAD mark
11   within the meaning of Cal. Bus. & Prof. Code §14247.

12   48.    Defendant's conduct has been undertaken with a willful intent to trade
13   on the reputation of Plaintiff and the reputation of the EVIL DEAD brand, and to
14   dilute the famous EVIL DEAD mark, thereby entitling Plaintiff to damages and the
15   other remedies available pursuant Cal. Bus. & Prof. Code §§ 14247, 14250,
16   including monetary and injunctive relief.

17   49.    Defendant's adoption and commercial use of a name and mark identical
18   and confusingly similar to the EVIL DEAD mark in connection with goods and
19   services identical to those sold and provided by Plaintiff under its EVIL DEAD
20   mark, and its use of the EVIL DEAD name and mark in connection with the
21   advertisement and promotion of such goods and services, have caused and are
22   causing immediate and irreparable injury to Plaintiff and will continue to damage
23   Plaintiff unless enjoined by this Court. Plaintiff has no adequate remedy at law.

24   WHEREFORE, Plaintiff Renaissance respectfully requests that the Court enter
25   judgment as follows:

26   1.    That judgment be entered for Plaintiff on all of its claims;

27

28

1    2.    Defendant, its principles, members, officers, partners, directors, agents,
2    representatives, successors or assigns, and all persons acting in concert or in
3    participation with any of them, be immediately and permanently enjoined from:

4        (a)    Using the EVIL DEAD name or mark or any derivation or
5                colorable imitations thereof, or any name or mark that is
6                confusingly similar thereto, including but not limited to the
7                names *Evil Dead*; *Evil Dead: Genesis of the Necronomicon*; *Evil
8                Dead: Genesis of the Necronomicon, Part 2*; *Evil Dead:
9                Consequences*, (collectively, "Prohibited Names"), as or as part
10               of the title of a motion picture or any other work of entertainment
11               or in connection with the promotion, development or production
12               of any motion picture or work of entertainment;

13       (b)    Using the EVIL DEAD name or mark in connection with the
14               provision and/or promotion of motion picture promotion,
15               development or production services, or any entertainment-related
16               goods or services;

17       (c)    making or employing any other commercial use of any of the
18               Prohibited Names;

19       (d)    representing to third parties by acts of omission or commission
20               that Defendant owns rights in the EVIL DEAD name or mark, or
21               that Defendant's works are associated with or approved by
22               Plaintiff or were created, prepared or distributed with the consent
23               or permission of Plaintiff;

24       (e)    using any other false designation of origin or false description or
25               representation or any other thing calculated or likely to cause
26               confusion or mistake in the mind of the trade or public or to
27               deceive the trade or public into believing that Defendant's
28               activities are in any way sponsored, licensed, endorsed,

1         authorized by or affiliated or connected with Plaintiff, or

2         originate from Plaintiff;

3   (f)   doing any other acts or things calculated or likely to cause

4         confusion or mistake in the mind of the public or to lead

5         purchasers or consumers or investors into the belief that the

6         products or services promoted, offered or sponsored by

7         Defendant emanate from or originate with Plaintiff or its

8         licensees, or are somehow sponsored, licensed, endorsed,

9         authorized by or affiliated or connected with Plaintiff, or

10        originate from Plaintiff;

11   (g)   further infringing Plaintiff's EVIL DEAD mark and damaging

12        Plaintiff's goodwill;

13   **(h)**   applying to register the EVIL DEAD mark, or any confusingly

14        similar mark, with the USPTO or any other trademark office or

15        governmental authority;

16   (i)   using or registering any of the Prohibited Names as part of any

17        domain name, regardless of cctld or gtld, or gtld;

18   (j)   purchasing any of the Prohibited Marks in connection with any

19        sponsored advertising on the Internet or using any of the

20        Prohibited Marks in any source code or otherwise using the

21        Prohibited Marks such that a search for Plaintiff on the Internet

22        will cause any domain name or website of Defendant to appear in

23        search results;

24   (k)   otherwise competing unfairly with Plaintiff or any of its

25        authorized licensees in any manner; and

26   (l)   assisting, aiding, or abetting any other person or business entity in

27        engaging in or performing any of the activities referred to in the

28        above subparagraphs (a) through (k), or effecting any

1          assignments or transfers, forming new entities or associations or

2          utilizing any other device for the purpose of circumventing or

3          otherwise avoiding the prohibitions set forth in subparagraphs (a)

4          through (k).

5     3.    Defendant be required to account for and pay to Plaintiff the profits

6 attributable to the conduct complained of herein, including disgorgement of (a) all

7 monies paid to Defendant for distribution rights of any movie advertised or promoted

8 under any name that includes EVIL DEAD; (b) all of Plaintiff's damages arising out

9 of the acts of unfair competition, false designation of origin and false advertising

10 under §43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a) respectively and;

11 (c) a sum equal to three times Defendant's profits or Plaintiff's damages (whichever

12 is greater), pursuant to §§ 35(a) and 35(b) of the Federal Trademark Act, 15 U.S.C.

13 §§ 1117(a) and 1117(b);

14    4.    Defendant be required to pay to Plaintiff the amount of Plaintiff's

15 damages arising out of Defendant's infringement and unfair competition under the

16 common law of the State of California and violation of the California Unfair

17 Business Practices Act, Cal. Bus. & Prof. Code § 17200 et seq.;

18    5.    Defendant be required to pay to Plaintiff the amount of Plaintiff's

19 damages arising out of Defendant's acts of dilution under Cal. Bus. & Prof. Code

20 §§§ 14247, 14250.

21    6.    Defendant be required to pay to Plaintiff exemplary and punitive

22 damages to deter any further willful infringement as the Court finds appropriate

23 pursuant to California Civil Code § 3294 et seq.;

24    7.    Defendant be required to pay to Plaintiff the costs of this action under

25 §35(a) of the Federal Trademark Act, 15 U.S.C. § 1117(a);

26    8.    Defendant be directed to file with the Court and serve on counsel for

27 Plaintiff within thirty (30) days after entry of any injunction issued by the Court in

28 this action, a sworn written statement pursuant to § 34(a) of the Federal Trademark

{F1001792 1}                                                    17

1 Act, 15 U.S.C. § 1116(a), setting forth in detail the manner and form in which

2 Defendant has complied with any injunction which the Court may enter in this

3 action;

4      9.      Defendant be directed to pay Plaintiff its reasonable attorneys' fees

5 along with the costs and disbursements incurred herein as a result of Defendant's

6 intentional and willful infringement, pursuant to 15 U.S.C. § 1117;

7      10.     Defendant be directed to pay Plaintiff's interest, including pre-judgment

8 interest on the foregoing sums pursuant to 15 U.S.C. §1117(a) and;

9      11.     Awarding and directing such further relief as the Court deems just and

10 proper.

11
Dated: Los Angeles, California

12          April 30, 2012                    FROSS ZELNICK LEHRMAN
13                                            & ZISSU, P.C.

14

15                                           By: _____
                                                Michael Chiappetta (Cal. Bar. No 185256)
16                                           Barbara Solomon (*Pro Hac Vice* pending)
                                             866 United Nations Plaza
17                                           New York, New York 10017
                                             Tel: (212) 813-5900
18                                           Fax: (212) 813-5901
                                             mc@fzlz.com
19
                                             bsolomon@fzlz.com
20

21                                           Michael D. Roth (Cal. Bar. No. 217464)
22                                           CALDWELL LESLIE & PROCTOR, PC
                                             1000 Wilshire Boulevard, Suite 600
23                                           Los Angeles, California 90017-2463
                                             Tel. (213) 629-9040
24                                           Fax (213) 629-9022
                                             roth@caldwell-leslie.com
25

26

27                                           *Attorneys for Plaintiff Renaissance*
                                             *Pictures, Lt*
28

{F1001792.1}                                              18

# DEMAND FOR JURY TRIAL

Plaintiff Renaissance Pictures Ltd. hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: May 1, 2012                    CALDWELL LESLIE & PROCTOR, PC

                                      -and-

                                      FROSS ZELNICK LEHRMAN & ZISSU, P.C.

                                      By: _____
                                              MICHAEL D. ROTH

                                      Counsel for Plaintiff Renaissance
                                      Pictures, Ltd.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV12- 3805 DSF (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENAISSANCE PICTURES,LTD.<br><br>PLAINTIFF(S)<br>v.<br><br>AWARD PICTURES, LLC<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV12-3805**-DSF (JCGx)<br><br><br>**SUMMONS** |

TO: DEFENDANT(S): _____

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ⟦X⟧ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Michael D. Roth</u> , whose address is <u>1000 Wilshire Boulevard, Suite 600, Los Angeles, CA   90017-2463</u> . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___**MAY - 2 2012**___          By: _____
                                            Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

RENAISSANCE PICTURES, LTD.

**DEFENDANTS**

AWARD PICTURES, LLC

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

MICHAEL D. ROTH, State Bar No. 217464
CALDWELL LESLIE & PROCTOR, PC
1000 Wilshire Boulevard, Suite 600
Los Angeles, CA 90017-2463

(213) 629-9040

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No     ☒ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. section 1125; Trademark Infringement and Unfair Competition Under California Common Law; Injury to Business Reputation

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☒ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV12-3805**

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)        CIVIL COVER SHEET        Page 1 of 2
CCD-JS44

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No [ ] Yes

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No [ ] Yes

If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)    [ ]   A. Arise from the same or closely related transactions, happenings, or events; or

[ ]   B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]   D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District, State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

[ ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California, or Foreign Country |
|---|---|
| | Connecticut |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.

    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):   MICHAEL D. ROTH    Date MAY 2, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |